**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Sabrina S.,[1]

Plaintiff,

v.

Frank Bisignano,
Acting Commissioner of Social Security,

Defendant.

Case No. 25-cv-3825 (SGE)

**ORDER**

---

This matter is before the Court and under its jurisdiction pursuant to 42 U.S.C. § 405(g). On appeal, Plaintiff Sabrina S. seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties consented to the disposition of the present case by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). Both Ms. S and the Commissioner have fully briefed their positions, and this matter is now ripe for review. (Dkts. 13, 15.) For the reasons below, the Court denies Ms. S's request for relief and grants the Commissioner's request for relief.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name, only her first name and last initial are provided.

## BACKGROUND

Ms. S applied for DIB under Title II and SSI under Title XVI on June 28, 2022, and May 16, 2022, respectively, alleging a disability onset date of April 1, 2021. (Admin. R. at 29.) Ms. S's claims were initially denied on December 27, 2022, and upon reconsideration on June 13, 2023. (*Id.*) Ms. S then requested that an ALJ review the denials. (*Id.*) On June 14, 2024, the ALJ held an administrative hearing at which Ms. S, accompanied by counsel, and an independent vocational expert ("VE") testified. (*Id.*; *id.* at 45-88.) The ALJ issued a decision on July 3, 2024, denying Ms. S's request for disability benefits. (*Id.* at 29-39.)

In reaching his decision, the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. §§ 404.1520(a), 416.920(a).[2] At step one the ALJ determined that Ms. S had not engaged in substantial gainful activity since April 1, 2021, the alleged disability onset date. (Admin. R. at 31.) At step two, the ALJ found that Ms. S had the following severe impairments: attention deficit hyperactivity disorder, major depressive disorder, generalized anxiety disorder, panic disorder, and post-traumatic stress disorder.

[2] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of at least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes that a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i–v).

(*Id.* at 32.) At step three, the ALJ determined that Ms. S did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment under appendix 1 to subpart P of part 404. (*Id.* at 32-33.) The ALJ then made the following residual functional capacity ("RFC") determination:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can perform work that consists of only simple tasks. She can have no interaction with the public. She can have occasional interaction with coworkers. The claimant can perform work that requires no more than occasional supervision, defined as a supervisor's critical checking of the person's work. The claimant can deal with occasional changes in a routine work setting. She cannot perform work that requires a specific production-rate pace, such as assembly line work.

(*Id.* at 34.) After determining Ms. S's RFC, the ALJ found at step four that Ms. S had no past relevant work. (*Id.* at 38.)

At step five, the ALJ found that other jobs existed in significant numbers in the national economy that Ms. S could perform. (*Id.* at 38-39.) Relying on the testimony from the VE, the ALJ found that Ms. S could perform the job requirements of "janitor," of which there are 225,000 jobs available nationally; "laundry worker," of which there are 170,000 jobs nationally; and "dishwasher," of which there are 125,000 jobs nationally. (*Id.*) Because the ALJ determined that Ms. S could perform jobs that exist in significant numbers in the national economy, he concluded that she was not disabled. (*Id.* at 39.)

Ms. S sought review of the ALJ's decision by the Appeals Council, which was denied on April 29, 2025. (*Id.* at 1.) Ms. S then filed this action challenging the ALJ's decision. (Dkt. 1.)

**STANDARD OF REVIEW**

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g). Under this review, the District Court is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p.

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The decision of the ALJ to deny benefits will not be reversed by the Court "so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

**ANALYSIS**

Ms. S makes one challenge to the ALJ's decision: that the ALJ's RFC does not properly account for her social-interaction limitations because he omitted the "brief," "superficial," and "infrequent" limitations recommended in medical opinions the ALJ found persuasive, and failed to explain his reasons for doing so.[3] Ms. S therefore asks this Court to remand for further proceedings. The Commissioner counters that the RFC is supported by substantial evidence and asks the Court to affirm the ALJ's decision.

An ALJ is "free to accept some, but not all, of a medical opinion" and "is not required to 'explicitly reconcile every conflicting shred of medical evidence.'" *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quotation omitted). Nor is an ALJ "required to adopt the exact limitations set in the opinions [he] found persuasive." *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023) (per curiam).

Thus, the ALJ did not have to adopt the medical opinions word-for-word and did not err merely by leaving "brief," "superficial," and "infrequent" out of the RFC. *See Jennifer L. v. Comm'r of the Soc. Sec. Admin.*, No. 23-cv-1822 (KMM/TNL), 2024 WL 4120375 (D. Minn. June 27, 2024), *R&R adopted*, 2024 WL 4003021, at *2 (D. Minn. Aug. 30, 2024) ("An RFC determination is not erroneous simply because the ALJ does not adopt, word-for-word, the limitations set forth in a medical opinion that the ALJ finds persuasive . . . [r]ather the focus is on whether substantial evidence supports the RFC.")

[3] The RFC also states that Ms. S can have "no interaction with the public." (Admin. R. at 34.) This determination is more restrictive than the medical opinions stating that she should have no more than "brief and superficial" contact with the public. (*Id.* at 36.) Ms. S does not challenge this aspect of the ALJ's decision.

(citing *Wyatt*, 2023 WL 6629761, at *1). But the "decisions about which limitations to include or exclude must be well-supported by evidence and clearly explained." *Jason L. v. O'Malley*, No. 23-cv-184 (JWB/JFD), 2024 WL 965240, at *2 (D. Minn. Mar. 6, 2024)

Here, the ALJ evaluated the opinions of two State Agency psychologists, Dr. Conroe and Dr. Mylan. They both opined that Ms. S's "ability to interact and get along with coworkers would be moderately impaired, but adequate for brief and superficial contact." (Admin. R. at 36; 95, 116.) The ALJ found their opinions to be persuasive. (*Id.* at 36.) He also found the opinion of the psychological consultive examiner Dr. Karayusuf to be persuasive. (*Id.*) Dr. Karayusuf opined that Ms. S should be "restricted to work involving brief, superficial, infrequent interactions with fellow workers, supervisors, and the public." (*Id.*; *id.* at 125.) The ALJ did not rely on other medical opinions in crafting Ms. S's RFC. (*See id.* at 36-37.)

The ALJ determined that limiting Ms. S to "occasional" interaction with coworkers and "no more than occasional supervision" was warranted notwithstanding the medical opinions suggesting her contact with coworkers and supervisors should be "brief," "superficial," and "infrequent. (*Id.* at 37.) He explained that [b]ecause the claimant lived with roommates and she had normal eye contact, she can have occasional interaction with coworkers." (*Id.*) He further explained that "[b]ecause the claimant got along well with providers and was articulate at the hearing, the claimant can perform work that requires no more than occasional supervision, defined as a supervisor's critical checking of the person's work." (*Id.*) The ALJ also noted that the medical record supported a less stringent social-interaction limitation based on the following:

> Her behavior was normal around examiners with normal eye contact and good cooperation. She was friendly with examiners. She had a full affect. The claimant was able to speak to a disability lawyer on appealing her disability claim.
>
> The claimant lived with her partner and one roommate, indicating an ability to live with others. She served as a moderate in one group chat and had a couple friends she spoke with online. In November 2022, the claimant reported her friendships were 'closer' due to playing a new video game. In August 2023, the claimant reported effectively managing a confrontation with a roommate and establishing a healthy boundary.

(*Id.* at 35 (record citations omitted).)

The record therefore establishes that the ALJ's RFC was well-supported by evidence and that his departure from the medical experts' opinions was clearly explained. For this reason, the Court must deny Ms. S's request for relief.

## CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings herein**, IT IS HEREBY ORDERED** that:

1. Ms. S's request for relief (Dkt. 13) is **DENIED**.
2. The Commissioner's request for relief (Dkt. 15) is **GRANTED**.
3. The matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 28, 2026

*s/ Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge